DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Shirley Parrett, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order finding she is not entitled to permanent total disability compensation and to issue a new order finding she is entitled to such compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate concluded that: (1) Dr. Murphy's report is not internally inconsistent, (2) Dr. Lutz's report is not internally inconsistent, and (3) the staff hearing officer's order complies with State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision, apparently contesting all three aspects of the magistrate's decision. For the reasons set forth in the magistrate's decision, as amplified here, the objections are overruled.
 {¶ 4} Relator initially contends the report of Dr. Murphy is internally inconsistent. As the magistrate noted, however, Dr. Murphy's report of the Mental Status Examination of relator begins with observations concerning a number of positive factors about relator. While the psychological testing section notes characteristics typical of persons with complaints similar to those relator expressed, it follows with possible diagnoses, some of which are outside relator's allowed conditions.
 {¶ 5} After weighing all of the factors noted on the mental examination, coupled with the allowed conditions, the doctor concluded in his report that relator had reached maximum medical improvement, her combined effects impairment was 17 percent, and she was capable of returning to her former occupation and of sustained remunerative employment. As such, the report, while arguably including some material unnecessary to the ultimate conclusion, nonetheless is consistent: the report weighed the various factors noted through the mental examination and psychological testing, limited those results to the allowed conditions, and reached the conclusion that relator is capable of sustained remunerative employment.
 {¶ 6} Relator also challenges the report of Dr. Lutz. Specifically, relator challenges the "boilerplate checklist" that fails to "provide any medical findings which might support the ability to perform sedentary work, or which might at least define that finding to a form meaningful upon review." (Relator's Objections, 6.)
 {¶ 7} Contrary to relator's contentions, the stipulated evidence contains a medical report from Dr. Lutz setting forth the history of relator's present illness, her past medical history, her habits, her physical examination, and a discussion of the industrial injury at issue. The report then answers specific questions and includes an opinion that claimant has reached maximum medical improvement. In addition, the report indicates a reference to the Fourth Edition of the AMA Guides Revised for arriving at an impairment assessment. Utilizing table 72 on page 110, Dr. Lutz concludes "* * * the claimant warrants DRE Category III, which equals a 10% whole person impairment. For meningitis and post-myelogram reactions: I will allow a 3% whole person impairment for the claimant's ongoing pain. Combining 10+3 the claimant warrants a 13% whole person impairment." Dr. Lutz's written report, combined with the checklist indicating relator is capable of sedentary work, is sufficiently detailed not only to allow the commission to reach a conclusion on relator's physical ability to perform sustained remunerative employment, but also to permit meaningful review.
 {¶ 8} Last, relator contends that because the report of neither Dr. Murphy nor Dr. Lutz can constitute some evidence, reliance on those reports results in a violation of Noll.
Because, however, the staff hearing officer's decision properly relied on those reports and, as the magistrate explained, further set forth the nonmedical factors the staff hearing officer employed, the commission's order meets the minimum requirements of Noll.
 {¶ 9} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision, as amplified here, as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
Lazarus, P.J., and Petree, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Shirley Parrett, : Relator, : v. : No. 03AP-477 Industrial Commission of Ohio and : (REGULAR CALENDAR) Montgomery County Personnel, : Respondents. :
 MAGISTRATE'S DECISION Rendered on November 20, 2003 IN MANDAMUS {¶ 10} Relator, Shirley Parrett, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order finding that she was not entitled to permanent total disability ("PTD") compensation and ordering the commission to issue an order finding that she is entitled to that compensation.
Findings of Fact
 {¶ 11} 1. Relator sustained a work-related injury on September 11, 1987, and her claim has been allowed for: "back strain-lower left side; meningitis and post-myelogram reactions; dysthymic disorder; somatoform pain disorder; aggravation of pre-existing degenerative disc disease; aggravation of chronic herniated lumbar disc L5-S1."
 {¶ 12} 2. Relator has not worked since September 17, 1987.
 {¶ 13} 3. On October 1, 2001, relator submitted an application for PTD compensation supported by the June 25, 2001 report of Dr. Michael Timpone who opined that, with regard to all her injuries, she was permanently and totally disabled. Dr. Timpone completed an occupational activity assessment wherein he indicated that relator could sit, stand, and walk, each for zero to three hours; lift, carry, push, pull, or otherwise move up to ten pounds for zero to three hours; occasionally climb stairs and reach overhead; frequently handle objects; and precluded from climbing ladders, using foot controls with her left lower extremity, crouching, stooping, bending, kneeling, as well as reaching at waist, knee, and floor level.
 {¶ 14} 4. Relator was examined by Dr. James T. Lutz concerning her allowed physical conditions. In his December 17, 2001 report, Dr. Lutz noted his objective findings, concluded that relator had reached maximum medical improvement ("MMI"), assessed a 13 percent whole person impairment, and concluded that relator was capable of sedentary work activity.
 {¶ 15} 5. Relator was also examined by Dr. Michael A. Murphy with regard to her allowed psychological conditions. Dr. Murphy administered the Millon Clinical Multiaxial Inventory-III ("MCMI-III") test to relator and concluded as follows:
* * * The Claimant exhibits a co-morbid and unrelated personality disorder with schizoid and dependent features. Her unusual thinking and cognitive slippage (i.e., distortion and auditory hallucinations) may be attributed to her schizoid personality. Interpersonal relationships may also show in-stability due to her schizoid adjustment (i.e. multiple divorces and emotional distance from family members). She also reports that she is more sedated as a result of her multiple psychotropics. She has participated in psychotherapy since 1993.
 {¶ 16} Dr. Murphy concluded that relator had reached MMI, assessed a 17 percent whole person impairment for her allowed psychological conditions, and opined that her psychological conditions were not work-prohibitive, that she was capable of both performing her former occupation as well as other sustained remunerative employment.
 {¶ 17} 6. The record also contains a November 10, 1998 report of Jill Shaffer, a clinical psychologist. Ms. Shaffer concluded as follows:
In the area of Activities of Daily Living there is Moderate impairment. Ms. Parrett does not do housework, laundry, or shopping. In the area of Socialization there is Moderate impairment. She feels irritated around her children and grand-children and avoids interaction with other family members. In the area of Attention, Concentration, Persistence and Pace the impairment is also Moderate, and Adaptation to Stress is also Moderately impaired. Overall level of impairment is Moderate, 35% to the body as a whole based on the[.] [Sic]
 {¶ 18} 7. A vocational evaluation was prepared by William T. Cody, MS, CVE, CRC, CCM, dated February 12, 2002. Mr. Cody opined that relator would not be able to adapt to any new kind of work activity due to her significant impairments and physical ability, her unskilled work history, her substantial psychological limitations, and her significant degree of pain.
 {¶ 19} 8. An employability assessment report was prepared by Dr. Beal D. Lowe and dated February 20, 2002. Based upon the report of Dr. Timpone, Dr. Lowe concluded that there were no employment options for relator. Based upon the reports of Drs. Lutz and Murphy, Dr. Lowe concluded that relator could perform the following jobs: "Cashiers; Receptionists and Info Clerks; Interviewing Clerks; Credit Checkers." Dr. Lowe noted that relator's age of 48 would not be a barrier to employment, that her high school diploma was an asset to employment and that her work history was neither an asset nor a barrier. He concluded that she would be able to perform entry-level sedentary jobs.
 {¶ 20} 9. Relator's application was heard before a staff hearing officer ("SHO") on December 30, 2002, and resulted in an order denying her application. The SHO relied upon the medical reports of Drs. Murphy and Lutz as well as the vocational report of Dr. Lowe. The SHO concluded that relator could perform sedentary work as such is defined in the Ohio Administrative Code and stated as follows regarding the nonmedical disability factors:
The Staff Hearing Officer has evaluated the vocational report of Dr. Beal D. Lowe who states that the injured worker's age (48) and education (High School Graduate) were not barriers to the injured worker's ability to find employment, although not having been employed since 1987, is not either an asset or a barrier.
The Staff Hearing Officer finds that the injured worker is a younger person who is able to read, write and perform basic math functions. The Staff Hearing Officer finds that the injured worker is capable of performing sustained remunerative employment of a sedentary nature and therefore denies the permanent total disability application.
 {¶ 21} 10. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law
 {¶ 22} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 23} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus.Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephensonv. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v.Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 24} Relator challenges the commission's order in three respects: (1) the psychological report of Dr. Murphy is internally inconsistent and cannot constitute some evidence; (2) the medical report of Dr. Lutz is internally inconsistent and cannot constitute some evidence upon which the commission could rely; and (3) the commission's analysis of the nonmedical factors did not meet the requirements of Noll and relator is entitled to PTD compensation pursuant to Gay.
 {¶ 25} Relator is correct in asserting that equivocal or inconsistent medical reports do not constitute some evidence upon which the commission could rely. State ex rel. Paragon v. Indus.Comm. (1983), 5 Ohio St.3d 72; State ex rel. Owens-CorningFiberglas Corp. v. Indus. Comm. (1994), 70 Ohio St.3d 263; andState ex rel. Eberhardt v. Flxible Corp. (1994),70 Ohio St.3d 549. Relator contends that Dr. Murphy's psychological evaluation is inconsistent given the results of the MCMI-III test which he administered. Relator points out that Dr. Murphy indicated that typically, patients with dysthymia cannot meet their day-to-day responsibilities but continue to experience a chronic dysphoria and that it is possible that the patient is seriously disturbed by many psychological problems. Relator notes further that Dr. Murphy indicated that her concentration and attention were poor and that she had deficits in memory functions, especially short-term memory. Relator notes that Dr. Murphy then went on to opine that she could perform both a full range of employment as well as her former position of employment and contends that, given the above findings, Dr. Murphy could not opine that relator was employable.
 {¶ 26} This magistrate disagrees with relator's argument.
 {¶ 27} First, it must be noted that, in administering the MCMI-III test, Dr. Murphy noted that typically patients who scored in the same range that relator scored tend to exhibit certain symptoms. However, Dr. Murphy also noted that relator may have responded to the test items as a "cry for help" to insure that she would come to his attention. In any event, Dr. Murphy noted that relator was alert and oriented in all spheres, that her comprehension of simple commands was unimpaired, that there was no evidence of cognitive dysfunction due to psychoses, head injury, or organicity, that she was not currently preoccupied with suicidal thoughts, that her thoughts were clear, understandable, relevant and goal-directed, that her abstract reasoning, concept formation, and fund of knowledge were estimated to be average. Dr. Murphy agreed with the diagnoses of dysthymic disorder and somatorm pain disorder and also noted as a further possible diagnoses, "dependent personality disorder and schizoid personality disorder." Ultimately, Dr. Murphy's conclusion that relator could perform both her former position of employment as well as other employment was based solely upon her allowed psychological conditions and not upon the additional psychological problems which Dr. Murphy opined that relator may have. The fact that Dr. Murphy indicated that her concentration and attention were poor and that she has some problems with her short-term memory, does not mean that Dr. Murphy's report is inconsistent or equivocal when he opines that she is capable of employment. In his report, Dr. Murphy noted both positive and negative factors and, in weighing those factors, he concluded that relator's impairment from the allowed psychological conditions was not work-prohibitive. Relator points out that the inconsistencies of Dr. Murphy's report are further highlighted when one considers a report of Dr. Shaffer, the clinical psychologist. While Dr. Murphy opined that relator had a 17 percent whole person impairment, Dr. Shaffer opined that she had a 35 percent whole person impairment. However, the commission is not required to explain why it gives greater weight to one medical report instead of another medical report. Instead, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact-finder.Teece, supra. Because this magistrate finds that the medical report of Dr. Murphy is not internally inconsistent and constitutes some evidence upon which the commission could rely, this argument of relator is well-taken.
 {¶ 28} Relator also argues that the report of Dr. Lutz is ambiguous. Relator notes that Dr. Lutz indicated that she had lost a tremendous amount of range of motion and is currently extremely deconditioned. Thereafter, Dr. Lutz indicates that she is capable of performing sedentary work without any further explanation. Relator contends that this is ambiguous.
 {¶ 29} In reviewing the report of Dr. Lutz, this magistrate notes that he listed his objective findings within the body of his report, concluded that relator had reached MMI, assessed a 13 percent whole person impairment, and concluded that relator was capable of performing sedentary work activity. Sedentary work is defined in Ohio Adm. Code 4121-3-34(B)(2)(a) as follows:
"Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 {¶ 30} Relator appears to be arguing that, given that Dr. Lutz noted that she had lost a tremendous amount of range of motion and is currently extremely deconditioned, that he cannot also opine that she is capable of performing sedentary work activity. Relator's argument simply is not well taken.
 {¶ 31} Relator also contends that the commission's order does not satisfy the requirements of Noll. This magistrate disagrees. Although the commission's analysis is short, it is complete. The commission found relator's age and education were not barriers to reemployment and that the fact that she had not been employed since 1987 was neither an asset nor a barrier. The commission noted that relator is a younger person, capable of reading, writing, and performing basic math, and that she is capable of performing sustained remunerative work employment of a sedentary nature. The commission also relied upon the report of Dr. Lowe who listed several jobs which relator would be currently capable of performing. The record indicates that relator was 48 years old at the time her application was heard, that she was a high school graduate, and that she had studied nursing after high school for two years. Relator had worked as a nurse's aide, a cashier for both a food service establishment as well as a retail store, and a housekeeping aide. Dr. Lowe noted that relator's prior retail sales and service work were assets to her reemployment. Based upon the above factors noted by the commission, this magistrate concludes that the commission's order meets the requirements of Noll and relator has not demonstrated that the commission abused its discretion.
 {¶ 32} Based on the foregoing, this magistrate concludes that relator has not demonstrated that the commission abused its discretion in denying her application for PTD compensation and relator's request for a writ of mandamus should be denied.